## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS  DIVISION

| | |
|---|---|
| PATRICK J. HIGGINS,<br><br>          Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of<br>the Social Security Administration,<br><br>          Defendant. | CV 19-49-GF-JTJ<br><br><br>**MEMORANDUM<br>AND ORDER** |

### INTRODUCTION

Plaintiff Patrick J. Higgins (Higgins) brought this action to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), denying his application for disability benefits and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

### JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Higgins resides in Cascade County, Montana.  29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3).  The parties have consented to have the undersigned conduct all proceedings in this matter and enter judgment.  (Doc. 5).

## BACKGROUND

Higgins is 61 years old. (Doc. 8 at 60). Higgins has a high school education. (Doc. 8 at 70). Higgins is a military veteran. (Doc. 8 at 70-71. Higgins served 21 years in the Coast Guard. *Id.* Higgins discharged from the Coast Guard in 2004. (Doc. 8 at 71). Higgins has past work experience as a real estate agent, wheat farmer and cattle rancher. *Id.* Higgins worked as a real estate agent from July 2004 through November 2006. (Doc. 8 at 369). Higgins worked as a farmer and rancher from November 2006 through December 2013. *Id.*

Higgins filed his application for Social Security disability and disability insurance benefits on July 30, 2015. (Doc. 8 at 25). Higgins alleged that he became disabled on July 5, 2010. (Doc. 8 at 217). Higgins alleged that he became disabled due to an inner ear virus and vertigo. (Doc. 8 at 104, 266). The last date that Higgins was insured was December 31, 2012. (Doc. 8 at 25).

An administrative law judge (ALJ) conducted a hearing on Higgins's application for disability and disability insurance benefits on November 29, 2017, and again on May 18, 2018. (Doc. 8 at 37-66, 67-103). The ALJ issued his decision on July 13, 2018. (Doc. 8 at 25-31). The ALJ determined that Higgins was not disabled at any time between July 5, 2010 and December 31, 2012. (Doc. 8 at 25). The ALJ determined that Higgins was not disabled during the relevant

2

time period because Higgins possessed the residual functional capacity to perform his past relevant work as a real estate agent. (Doc. 8 at 31).

Higgins requested that the Administration Appeals Council (Appeals Council) review the ALJ's decision. (Doc. 8 at 213-214). The Appeals Council denied Higgins's request for review. *Id.* The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner. *Id.*

Higgins filed the present appeal on July 22, 2019. (Doc. 1). The matter has been fully briefed. (Docs. 10, 11 and 12). The Court is prepared to rule.

## STANDARD OF REVIEW

The Court's review in this matter is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

3

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382a(3)(A),(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof under steps one through four. *Bustamante*, 262 F.3d at 954. The Commissioner bears the burden of proof under step five. *Id.* The five steps of the inquiry are:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

4

2.   Does the claimant have an impairment that is severe or a
     combination of impairments that is severe?  If so, proceed to
     step three.  If not, the claimant is not disabled.  *See* 20 C.F.R.
     §§ 404.1520(c), 416.920(c).

3.   Do any of the claimant's impairments "meet or equal" one of
     the impairments described in the listing of impairments in
     20 C.F.R. Part 220, Appendix 1?  If so, the claimant is
     disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§
     404.1520(d), 416.920(d).

4.   Is the claimant able to do any work that he or she has done in the
     past?  If so, the claimant is not disabled.  If not, proceed to step five.
     *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.   Is the claimant able to do any other work?  If so, the claimant is not
     disabled.  If not, the claimant is disabled.  *See* 20 C.F.R. §§
     404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954.

## BACKGROUND

### A.   ALJ's determination

At step one, the ALJ determined that Higgins had not engaged in any

substantial gainful activity during the period from his alleged onset date of July 5,

2010 through December 31, 2012, the date he was last insured.  (Doc. 8 at 27).

At step two, the ALJ found that Higgins had a single severe impairment:

vertigo.  (Doc. 8 at 27).  The ALJ found that Higgins also had the following non-

severe impairments: retinal detachment and hypertension.  *Id*.

At step three, the ALJ found that Higgins did not have an impairment, or

5

combination of impairments, that met or was medically equal to one of the listed impairments. (Doc. 8 at 27-28).

Before considering step four, the ALJ determined Higgins's residual functional capacity. The ALJ determined that Higgins possessed the residual functional capacity to perform a full range of work at all exertional levels subject to the following non-exertional limitations: 1) Higgins must avoid concentrated exposure to unprotected heights; and 2) Higgins must avoid working around hazardous/moving machinery. (Doc. 8 at 28).

At step four, the ALJ determined that Higgins possessed the residual functional capacity to perform his past relevant work as a real estate agent from his alleged onset date (July 5, 2010) through the date he was last insured (December 31, 2012). (Doc. 8 at 30).

Based on this finding, the ALJ determined that Higgins was not disabled. (Doc. 8 at 31).

### B.    Higgins's Position

Higgins argues that the Court should reverse the Commissioner's decision and award benefits or remand the case for further proceedings. (Doc. 10 at 24). Higgins argues that the Commissioner's decision should be reversed for the following reasons:

6

1.    The ALJ failed to provide sufficient reasons for discounting the opinion offered by treating physician Dr. Libby Lake, M.D., in 2015, that he needed to rest every hour or two to relieve his vertigo;

2.    The ALJ failed to provide sufficient reasons for discounting his testimony regarding the intensity, persistence and limiting effects of his vertigo; and

3.    The ALJ erred at step 5 by presenting a hypothetical question to the vocational expert that failed to include all of the functional limitations related to his vertigo.

(Doc. 10 at 10-24).

## C.    Commissioner's Position

The Commissioner argues that the Court should affirm the ALJ's decision because the ALJ's decision was based on substantial evidence and was free of legal error.

## DISCUSSION

## A.    Opinion of Higgins's treating physician

Dr. Libby Lake, M.D. was one of Higgins' treating physicians.  Dr. Lake wrote a letter on July 18, 2015, in which she opined that Higgins needed to "rest every hour or two in a reclining position" to relieve his vertigo.  (Doc. 8 at 531, 624).  The ALJ gave Dr. Lake's opinion "minimum weight."  (Doc. 8 at 30).

Higgins argues that the ALJ's decision should be reversed because the ALJ failed to provide sufficient reasons for discounting Dr. Lake's opinion.  (Doc. 10

7

at 10-17).

The medical opinions of a treating physician are accorded "substantial weight." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). The opinions of a treating physician are accorded substantial weight because the treating physician is in a unique position to know and observe the patient through the doctor-patient relationship. See *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).

Although the opinions of a treating physician are accorded substantial weight they "are not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). An ALJ may disregard the uncontradicted opinion of a treating physician if the ALJ provides clear and convincing reasons supported by substantial evidence in the record. See *Ryan v. Comm'r of Social Security*, 528 F.3d 1194, 1198 (9th Cir. 2008). An ALJ satisfies this substantial evidence requirement if the ALJ sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states his or her interpretation of the evidence, and makes findings. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Here, the ALJ stated that he assigned minimal weight to Dr. Lake's opinion

8

because Dr. Lake offered her opinion 2 years and 5 months after Higgins was last insured, and the opinion was not consistent with Higgins's treatment notes during the period from July 5, 2010 through December 31, 2012. (Doc. 8 at 27). The relevant treatment notes prepared during the period from July 5, 2010 through December 31, 2012, show that Higgins first sought medical treatment for his vertigo on July 6, 2010, at the walk-in facility at the Great Falls Clinic. (Doc. 8 at 475-476). Higgins complained of lightheadedness. *Id.* Higgins's physical exam at that time was normal. *Id.*

Higgins first sought medical care from Dr. Lake on July 23, 2010. Higgins reported symptoms that fluctuated with certain movements. (Doc. 8 at 479). Higgins's neurological exam was normal. *Id.* Dr. Lake referred Higgins to ear, nose and throat specialist Dr. David Kluge, M.D. (Doc. 8 at 624).

Dr. Kluge examined Higgins on August 25, 2010. (Doc. 8 at 483-484). Higgins reported to Dr. Kluge that his symptoms had improved about 70% since July 2010. Higgins's physical exam at that time was normal. *Id.*

Dr. Kluge examined Higgins again on January 21, 2011. (Doc. 8 at 485). Higgins reported that his vertigo symptoms had improved approximately 75%. *Id.*

Dr. Lake examined Higgins on May 9, 2011. (Doc. 8 at 491). Higgins's physical exam was normal. *Id.* Higgins reported that he had been very active on

his ranch despite experiencing some vertigo. *Id.*

Dr. Tyler Will, M.D. performed an MRI on Higgins's brain on May 17, 2011. (Doc. 8 at 495). The MRI was normal. *Id.*

Dr. Kluge examined Higgins on January 12, 2012. (Doc. 8 at 513). Higgins reported that his vertigo symptoms were "markedly better," and "generally tolerable." *Id.* Higgins's vertigo test at that time was basically negative. *Id.* Dr. Kluge found a 15% weakness in Higgins's left ear that was considered insignificant. *Id.* Dr. Kluge recommended that Higgins stay active as possible without putting himself in danger of falling. *Id.*

Dr. Lake examined Higgins on May 11, 2012. (Doc. 8 at 514-515). Higgins physical exam was normal. *Id.* Higgins reported that he had been active on his ranch. *Id.* Higgins reported that his vertigo was intermittent. *Id.* Higgins reported that he occasionally took afternoon naps to alleviate his vertigo. *Id.*

Dr. Lake examined Higgins in May 8, 2013. (Doc. 8 at 519-519). Higgins's physical exam was normal. *Id.* Higgins reported that he had been active with ranching, irrigating and exercising over the past year, despite some symptoms of vertigo. *Id.*

In summary, the treatment notes prepared during the period from July 5, 2010 through December 31, 2012, show: that Higgins vertigo was intermittent and

10

tolerable; that Higgins's medical exams and vertigo tests were basically normal; that Higgins was quite active on his ranch prior to the date he was last insured; and Higgins had never complained to his health care providers that he needed to rest every hour or two to relieve his vertigo. (Doc. 8 at 30).

The reasons provided by the ALJ for discounting Dr. Lake's opinion that Higgins needed to rest every hour or two to relieve his vertigo symptoms, were clear and convincing and supported by substantial evidence in the record. The ALJ did not err when he gave Dr. Lake's opinion "minimal weight."

**B.     Higgins's testimony regarding the limiting effects of his vertigo**

Higgins testified during the hearings before the ALJ in November 2017 and May 2018. Higgins testified that he was unable to work due to his vertigo.  (Doc. 8 at 84-88, 101-102). Higgins testified that his vertigo caused him to suffer fatigue, imbalance, an inability to move or turn his head rapidly, lightheadedness and dizziness. (Doc. 8 at 28). The ALJ found that Higgins's vertigo could reasonably be expected to cause the alleged symptoms. (Doc. 8 at 28). However, the ALJ discounted Higgins's testimony regarding the "persistence and limiting effects" of his vertigo. *Id*. Higgins argues that the ALJ erred when the ALJ discounted his testimony regarding the limiting effects of his vertigo. (Doc. 10 at 17-24).

11

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptoms he has alleged. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).  Rather, the claimant need only show that his impairment could reasonably have caused some degree of the symptoms. *Id.*

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of his symptoms only if the ALJ offers "specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The ALJ must identify the portion of the claimant's testimony that is not credible and the ALJ must describe the evidence that undermines the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  The ALJ's findings must be sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  General findings by the ALJ are not

sufficient.  *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102

(9th Cir. 2014).

The ALJ may use "ordinary techniques of credibility evaluation" to weigh a

claimant's credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  An

ALJ may consider the following factors in determining whether a claimant's

testimony is credible: the claimant's reputation for truthfulness; inconsistencies in

the claimant's testimony; inconsistencies between the claimant's testimony and

her conduct; the claimant's daily activities and work record; and the testimony of

physicians and third parties concerning the nature, severity, and effect of the

claimant's alleged symptoms.  *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th

Cir. 2002).

Here, the ALJ stated that he had discounted Higgins's testimony regarding

the limiting effects of his vertigo because his testimony was not consistent with

the medical findings of his health care providers, and was not consistent with the

"active" ranch work he had reported to his treating physicians.  With respect to the

medical evidence, the ALJ noted that all of Higgins's physical examinations were

normal, that Higgins's brain MRI was normal, that Higgins had reported less

significant symptoms over time, and that Higgins had not taken any medication or

13

received any treatment for vertigo during the period from January 12, 2012

through December 31, 2012.   (Doc. 28 at 28-30).  With respect to Higgins's daily

work activities, the ALJ noted that Higgins had reported to his treating physicians

in 2011 and in 2012 that he was able to perform daily ranch work, which included

feeding 30 cows, maintaining fences and delivering calves during calving season.

(Doc. 28 at 28-30, 45-46).

The reasons provided by the ALJ for discounting Higgins's testimony were

specific, clear and convincing.  No legal error occurred.

### C.    Hypothetical question presented to the vocational expert

Higgins argues that the ALJ's hypothetical question to the

vocational expert was legally deficient because it failed to include all of the

functional limitations related to his vertigo.  Higgins argues that the hypothetical

question should have included a limitation stating that his vertigo caused him to be

off-task 20% of the time.  (Doc. 10 at 24; Doc. 12 at 11).

Hypothetical questions posed to a vocational expert must include all of the

claimant's medical and vocational limitations that are supported by substantial

evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-1218 (9th Cir.

2005).  Medical and vocational limitations that are not supported by substantial

evidence need not be included in the hypothetical presented to the vocational

14

expert. *Magallenes v. Bowen*, 881 F.2d 747, 756-757 (9th Cir. 1989).

The ALJ's hypothetical question included two functional limitations that were related to his vertigo. The ALJ stated that Higgins must avoid concentrated exposure to unprotected heights, and the ALJ also stated that Higgins must avoid working around hazardous/moving machinery. (Doc. 8 at 28). These limitations were supported by substantial evidence. The 20% off-task limitation requested by Higgins was not supported by substantial evidence. The ALJ was not required to include such a limitation in his hypothetical question to the vocational expert. *Magallenes*, 881 F.2d at 756-757. *Id.*

## CONCLUSION

The ALJ's decision was supported by substantial evidence. The ALJ did not commit legal error.

## ORDER

1.     The Commissioner's decision to deny benefits to Higgins is AFFIRMED.

2.     This case is DISMISSED with prejudice.

3.      The Clerk is directed to enter judgment accordingly.

DATED this 14th day of April, 2021.

John Johnston
United States Magistrate Judge